BETTERTON, Appellant, v. O'DWYER, Respondent.

St. Louis Court of Appeals, April 2, 1907.

1. CRIMINAL COSTS: Exemptions from Execution: Insolvent Criminals. Section 2683, Revised Statutes 1899, making all the property of a person convicted of a criminal offense liable for the payment of costs, should be construed with other statutes *in pari materia* relating to exemptions from execution, release of insolvent criminals, etc., and it should be construed as it was formerly construed with statutes *in pari materia* including the statute relating to imprisonment for debt; a history of enactments relating to the subject is outlined.

2. ———: ———: ———. The statutes relating to exemptions from execution in civil cases apply to a levy for a fine and costs

imposed for a criminal offense, and where a constable took from the prisoner money which the prisoner claimed exempt and applied it in the payment of the fine or costs adjudged against the prisoner, he was liable in a civil action to the prisoner for the amount so taken.

Appeal from Barry Circuit Court.—*Hon. F. C. Johnston, Judge.*

REVERSED AND REMANDED (*with directions*).

*T. D. Steele* for appellant.

We presume it will be admitted, that if plaintiff was entitled to his exemption, and his not having the articles allowed by the statute he could claim and hold other property or the money in this case in lieu of the articles mentioned as being exempt. So on that question we will only cite in support thereof the following cases: Bank v. Borgfield, 93 Mo. App. 62; State ex rel. v. Wolf, 81 M'o. App. 586; Green v. Baxter, 91 Mo. App. 633; R. S. 1899, section 3162.

*D. H. Kemp* for respondent.

The State's lien on the property, real and personal, of any person convicted of a criminal offense, shall be bound for the payment of all fines and costs which he may be adjudged to pay. R. S. 1899, sec. 2683.

The Legislature of this State enacted chapter 16, article 13, Revised Statutes 1899, years ago as a guide for criminals, or persons convicted of crime; this article seems to be complete within itself, and fully points out the means by which one convicted can be released from jail, after once being committed, under the terms of section 2768, Revised Statutes 1899.

GOODE, J.—The plaintiff herein pleaded guilty before a justice of the peace to the charge of assault and battery and was fined fifty dollars. The justice issued an execution on the judgment, commanding the con-

stable of the township to levy the fine and costs on the goods and chattels of Betterton, or for want of goods, to commit the prisoner to the county jail, to be kept until the fine and costs were discharged by due process of law. When Betterton was committed under this process, the defendant, as constable, searched him and took from his person, against his protest, the sum of $18.81. This money was levied on by the constable under the writ of execution to pay both the fine and costs of the criminal case, or the costs alone, it does not appear which. Betterton protested not only against the taking of the money, but against the levy, too; saying he wanted the money for the benefit of his family, who would "be on sufferance" while he was in jail if they did not get it. The constable insisted on his right to make the levy and disregarded Betterton's protest and claim that it was exempt. Betterton asked permission to write a letter to his wife to tell her to get the money from the constable; but the latter said it would do no good to write as he was bound to levy on the money for the fine and costs. After Betterton had served his sentence in jail, he demanded of defendant the return of the money and on being refused, instituted this action to recover it. The evidence leaves no doubt that the plaintiff was the head of a family and that his total property was worth less than one hundred dollars. The case went to the circuit court on appeal from a justice of a peace, and at the conclusion of the evidence introduced at the trial in the circuit court, the jury were directed to return a verdict for defendant; which having been done, and judgment entered upon the verdict, the plaintiff appealed to this court. The only question submitted for decision is whether the statutes exempting personal property to a certain amount from execution, can be invoked against a levy for a fine and costs imposed for a criminal offense. It is contended in behalf of the defendant that the exemption statutes prevail only against executions in civil

cases and not against demands in favor of the State. Those statutes are found in the chapter on executions. [R. S. 1899, sec. 3159, et seq.] Defendant's counsel contends that a separate scheme of procedure, unconnected in any way with executions in civil cases, is provided by the statutes controlling the collection of fines and costs, which prevent, by necessary implication, the exemption laws from taking effect in favor of one sentenced to pay a fine and costs. The statutes invoked in support of the last proposition compose article 13, chapter 16, of the Revised Statutes of 1899, said article being entitled "Relief of Insolvents Confined on Criminal Process." Certain other sections of the Revised Statutes of 1899 are cited in favor of the defendant. The course of legislation in this State on the subject will be traced to its origin, for the purpose of showing that the statutes in force at present have been in existence, in substance, from an early day, and that their apparent inconsistencies can be reconciled by going back to the statutes of 1835 and considering the laws relating to insolvent criminals in connection with the act then in force for the relief of imprisoned debtors. Section 2683 of the present statutes, says the property, real and personal of anybody charged with a criminal offense, shall be bound, from the time of final conviction, for the payment of all costs which he may be adjudged to pay. That section is quite similar to section 2814, in the article on criminal insolvents, which says the property and effects owned by the insolvent petitioner at the time of his discharge, and all he shall thereafter acquire, shall be liable to execution for the payment of costs and expenses. Section 2683 of the present statutes has been on the statute books of the State, in substantially the same language, since 1835 and will be found in all the revisions. [R. S. 1835, p. 496, sec. 33; R. S. 1845, p. 887, sec. 30; R. S. 1855, p. 1200, sec. 31; G. S. 1865, p. 854, sec 31; R. S. 1879, Vol. 1, sec. 1960; R. S. 1889, Vol. 1, sec. 4264.] It

follows that whatever influence it has on the construction of other statutes *in pari materia,* with reference to the determination of the point in hand, it has had from the first. Section 2728 of the Revised Statutes of 1899, provides for the searching, by order of the committing magistrate, of any persons committed for an offense, and the taking into custody of any property found in his possession, to be applied to his support while in confinement and the payment of any costs adjudged against him in a criminal case. This section appeared first in its present language, in the Revision of 1855, at page 1207, section 5. Prior to that time the law provided for searching a prisoner, but said the money or property found on him might be taken and applied to his support while in confinement; not authorizing it to be used to pay costs. Section 2774, of the Revised Statutes of 1899, says if the defendant is found guilty, and a fine is assessed, the justice shall enter judgment for the fine and the defendant be adjudged to pay the costs and be committed to the county jail until the fine and costs are paid, or until he is discharged under the provisions of section 2775. The latter says that if a person is unable to pay a fine and costs assessed against him, the justice shall have the power to commute such fine and costs to imprisonment in the county jail for a term not exceeding one day for every two dollars of the fine and costs and not less than one day for every ten dollars thereof. That section, in so far as it allows the commutation of the fine to imprisonment, is found in the Revised Statutes of 1889 in sections 4354 and 4355, and in the Statutes of 1879, Volume 1, in sections 2050 and 2051. The latter section was a new one in the Revision of 1879, but corresponded to sec. 29, c. 214, p. 854 of the General Statutes of 1865, which contained also two sections (30 and 31, page 854) providing for the release of the prisoner after twenty days' imprisonment under the laws allowing the relief of insolvent persons confined on criminal process.

Those three sections are found in The Revised Statutes
of 1855 (section 30, 31 and 29, page 1200). The law for
commuting a fine occurs in the revision of 1835 (section
31, p. 496) and in that of 1845 (section 28, p. 887).
There is also a section (29, p. 887) of the statutes of
1845, permitting a discharge of the prisoner under the
Insolvent Debtor's Act; and so there is in the statutes
of 1835 (section 32, p. 496.) The article providing for
the Relief of Insolvents Committed on Criminal Process,
is found in the Revised Statutes of 1899 (Article 13,
chapter 16); in those of 1889 (Article 13, chapter 48);
in those of 1879 (Article 24, chapter 24); in those of
1865 (chapter 218) and in those of 1855 (chapter 82).
It first appeared in the Revision of 1855 (Volume 1,
chap. 82) the Act having been passed and approved No-
vember 25 of said year, and has remained substantially
unchanged from that date. The remedy provided prior
to 1845 for the relief of insolvents confined on criminal
process, is found in section 32, page 496, of the Revised
Statutes of 1835. It says a person detained for the *costs*
of a criminal prosecution shall be permitted to take the
benefit of the laws for the relief of insolvent debtors,
on making application for that purpose and conforming
to the provisions of such laws. It will be observed that
the relief did not then reach to the fine. It was extended
to do so in the Statutes of 1879 (vol. 1, sec. 2078). In
1835 imprisonment for debt existed in this State and the
laws referred to as those to be followed by an insolvent
convict to obtain release, were the statutes according
the privilege to imprisoned debtors. The act is found
on page 327 of the Statutes of 1835 and is entitled "An
Act for the Relief of Insolvent Debtors." The first sec-
tion of the act requires the petitioner to offer to deliver
for the use of his creditors, all his property except the
wearing apparel of himself and family, with a prayer
to be permitted to take the benefit of the act. This sec-
tion corresponds exactly to section 2802 of the present

statutes for the relief of criminal insolvents. Section 4 of the Act of 1835 required the debtor to deliver a schedule containing, among other things, a .full and true inventory of all his estate, both real and personal, and the circumstances thereof. [R. S. 1835, p. 328.] The sixth paragraph of said section corresponds, in substance, with section 2803 of article 13 of the present statutes. Section 5 of the Act of 1835 (R. S. 1835, p. 329) provided for an affidavit by an insolvent debtor, as section 2804 of the present statutes provides for an affidavit by an insolvent criminal. Section 6 of the Act of 1835, provided that the insolvent debtor petitioning to be released should deliver to the sheriff of the county a schedule of his property in possession, mentioned in the schedule, "together with his books, title papers, evidence of debts, and contracts of every kind whatsoever." This statute is exactly like section 2806, of the present statutes, relating to the release of criminal insolvents. Section 7 of the Act of 1835, says "the sheriff shall certify the same (i. e. the schedule of property) to the judge, justice, or clerk to whom the application is made, who shall thereupon cause to be delivered or reserved to such debtor, such goods, chattels and property as shall, for the time being, be by law exempt from execution." This is the exact language of section 2807 of our statutes for the use of insolvent criminals. It thus appears that the relief originally allowed to a person confined on conviction of a misdemeanor against the costs was precisely the same relief provided for imprisoned debtors. In 1845 imprisonment for debt was abolished in this State. [R. S. 1845, p. 574.] The act doing this was approved March 27, 1845. Nevertheless, in the revision of the Statutes of 1845, the old section 32, p. 496 of the Statutes of 1835, providing that insolvent criminals might be released on compliance with the law for the relief of insolvent debtors, was retained as section 29 (p. 887) of the Statutes of 1845. That is to say, though imprison-

ment for debt had been abolished and, therefore, there was no provision in the statutes for releasing debtors, this fact was lost sight of in the revision. But in 1855 it was noticed, and instead of saying in the Revised Statutes of said year, that an insolvent criminal might be released by complying with the law for imprisoned debtors, a separate article was enacted for the release of criminals (vol. 1, p. 871). This article was substantially, perhaps exactly, like it is to-day, and, as we have shown, consisted of certain sections copied from the old statutes for the relief of imprisoned debtors, and applied to the case of persons confined for non-payment of fines and costs. It thus appears that the legislation on this subject has continued practically unchanged from its first enactment until now. Hence it is reasonable to hold that whatever effect such legislation had in 1835 on the right of a criminal insolvent to claim the benefit of the exemption statutes of the State, exists to-day. In the Statutes of 1835, the provison was that a person detained for the cost of a criminal proceeding, should be permitted to take the benefit of the insolvent debtor's law, on making application for that purpose. [R. S. 1835, p. 496. sec. 32.] Moreover, all our present statutory provisions in regard to the entire property and estate of the convicted person being liable for his fines and costs, were in force then. [R. S. 1835, sec. 33.] Now the plain meaning of the Act of 1835, concerning the release of imprisoned debtors, was that though such debtor was required to offer to deliver, for the use of his creditors, all his property, except the wearing apparel of himself and family, and make a schedule of his property and deliver the same to the sheriff (just as the insolvent convict must do now) the debtor was allowed such goods, chattels and property as were, at the time, exempt from execution. [R. S. 1835, p. 329, sec. 7.] This section of the act regarding imprisoned debtors, cannot be construed to mean the debtor was to enjoy no

exemption except the wearing apparel of himself and family. It plainly referred to the exemptions allowed in the statutes on executions, which, in many respects were the same as the present exemptions. [R. S. 1835, p. 255, sec. 14.] It follows that in determining, under the laws of 1835, the exemption enjoyed by an imprisoned debtor, the exemption clauses contained in the chapter on executions were to be construed as *in pari materia* with the article for the relief of the insolvent debtor and also as *in pari materia* with the statutes providing for the release of insolvent criminals on their complying with the law for the relief of debtors. Section 2807 of the Revised Statutes of 1899, relating to insolvents confined on criminal process, is an exact copy of section 7 on page 329, of the Revised Statutes of 1835, relating to the relief of imprisoned debtors. Both sections say the prisoner who petitions shall be allowed such goods, chattels and possessions as shall be, for the time being, exempt from execution; meaning the property exempted by the statutes allowing immunity to certain personal property belonging to the head of a family; not merely the wearing apparel of himself and family mentioned in section 2802 of the present statutes, and in section 1, page 328 of those of 1835. In other words, the intention of the law in 1835 was to afford the same exemptions against executions for criminal costs, as existed against executions in civil cases, and the intention of the present laws is the same, save that now the exemption prevails not only against criminal costs, but fines as well. Hence, all these statutes which say the entire estate of the prisoner, real and personal, present and prospective, shall be subject to levy for the fines and costs, must be taken to mean all he has or acquires in excess of the exemptions allowed him by the execution law. This point never has been adjudged in this State; but the policy and purpose of the exemption laws appear to require their application in favor of the

head of the family who is liable for a fine and costs. The purpose is to protect the wife and children, and the statutes ought to be construed to protect them as much as possible, not only from the improvident, but from the criminal conduct of the husband; and on principle we find no difficulty in reaching the conclusion to which we have come by our study of the statutes. In State v. Pitts, 51 Mo. 134, the question was whether the surety in a criminal recognizance, on which the State had obtained final judgment and caused execution to issue, could claim a homestead against an execution in favor of the State. It was said in the opinion that our homestead law uses the broadest language and exempts the homestead from attachment and execution in all cases except as therein provided, there being no reservation in favor of the State. It was held the homestead was exempt from levy under the judgment. In arriving at the intention of the lawmakers, the court referred to analogous exemptions in the chapter on executions, and pointed out that the State had been careful to declare that exempt personal property should remain subject to a levy for taxes; indicating by this exception an intention to make the exemption laws prevail against any demand of the State, except for taxes. The decision does not determine the exact point before us, inasmuch as the execution was not issued for a fine and costs; but it does determine that, in general, the exemption statutes prevail against the State. In passing on similar questions, the courts of some States have felt bound to deny immunity from levy in cases like the one before us, because of the narrow wording of their exemption laws, which expressly applied only to executions for debts. [Williams v. Bowden, 69 Ala. 433; Keller v. McMahan, 77 Ind. 62; Commonwealth v. Ford, 29 Gratt. (Va.) 683.] Our exemption laws, as was pointed out by the Supreme Court in State v. Pitts, use general terms, merely saying the enumerated property, when owned by

the head of a family, shall be exempt from attachment
and execution. [R. S. 1899, sec. 3159.] Now under
laws of that breadth it has been held by courts and
stated by text-writers, that immunity from levy for a
fine and costs, obtains. In Thompson on Homestead
and Exemptions, section 386, it is said that where the
statutes reserve no exception in favor of the State, ex-
emptions are allowed against the demand of the State,
as had been held by all the tribunals of the country, save
those of Kentucky and Georgia; citing Commonwealth
v. Cook, 8 Bush (Ky.) 220 and Brooks v. State, 54 Ga.
36. It was shown by the Supreme Court of the United
States in Fink v. O'Neil, 106 U. S. 272, that the decisions
of the State courts are uniform; as the opinion in Com-
monwealth v. Lay, 12 Bush (Ky.), modified Common-
wealth v. Cook, and the Georgia case really turned on
the question of whether the exemption operated retro-
spectively. The opinion in Fink v. O'Neil discussed the
question of when exceptions are allowed to exemp-
tion laws in favor of a sovereignty. In said cause a
homestead had been levied on for a judgment in favor of
the United States, and the owner sued to enjoin the mar-
shal from proceeding further with the execution, on the
ground that the property was exempt under the laws of
Wisconsin. The opinion adopted the language of cer-
tain State courts, declaring exemption laws are intended
for the benefit of the women and children of a family,
and ought to be liberally construed in their favor. A
concession has been made, sometimes, to the sovereignty
in the collection of its revenues and taxes, even independ-
ent of a statute, to prevent the functions of the State
from being crippled by releasing property from taxa-
tion. Whatever merit this reason possesses, it is not
pertinent to the instance of an execution for a fine and
costs. The precise point before us was determined in
favor of the prisoner in Loomis v. Gerson, 62 Ill. 11, and
in Commonwealth v. Lay, 12 Bush 283, the question be-

ing the right to seize property for fines and costs. Cognate decision are State v. Williford, 36 Ark., and Doe v. Deavors, 11 Ga. 79. We are satisfied, both on principle and authority, that the plaintiff, in view of the language of our statutory laws, was entitled to hold as exempt, the money levied on by the defendant. Therefore the judgment will be reversed and the cause remanded with the direction to enter judgment for the plaintiff. All concur.