# MINERVA MARTIN, Appellant, v. J. W. BARNETT, Respondent.

St. Louis Court of Appeals.    Argued and Submitted May 8, 1911.
Opinion Field June 6, 1911.

1. **EXEMPTIONS: Rights of Married Women: Evidence.** In an action by a married woman against a constable for selling property belonging to her husband, levied on in an attachment suit against him but which had been claimed by her as exempt, under section 2185, Revised Statutes 1909, the fact that the affidavit for attachment, in addition to stating defendant had absconded and absented himself from his place of abode, alleged he was not a resident of this state was not proof of that fact.

2. ————: ————: **Sufficiency of Evidence.** In an action by a married woman to recover property taken under attachment against her husband, but claimed by her as exempt, under section 2185, Revised Statutes 1909, evidence *held* to show that the husband had absconded prior to the attachment and· was absent from his usual place of abode down to the time of the trial of the action by the wife, excepting his return on a single day for the purpose of entering his appearance and waiving exemptions in the attachment suit.

3. **FEES: Justices' Courts: Constables: Taxation of Fees.** Where, in a suit in a justice's court, property is seized under a writ of attachment, and is subsequently seized under a general execution issued in the same suit, and the constable holds the property under and by virtue of the last seizure alone, neither the constable nor the justice has any right in law to tack onto it the costs accrued under the former seizure.

4. **EXEMPTIONS: Rights of Married Women: Statutory Construction.** Section 2185, Revised Statutes 1909, giving the wife of the owner of property the right to claim exemptions when the husband has absconded or absented himself from his usual place of abode in the state, and section 8304, providing that a married woman may invoke the benefit of exemption laws, except where her husband has done so, are to be given a liberal interpretation in the interest and for the benefit of those within their protection.

5. ————: ————: **May Exercise Right, When.** ·Under section 2185, Revised Statutes 1909, authorizing a married woman to claim exemptions in her husband's property, when he has absconded or absented himself from his usual place of abode in the state, and section 8304, providing that a married woman

may invoke exemption laws unless her husband has done so, either the husband or the wife may claim the exemptions, but both may not; there being only one exemption.

6. ———: ———: ———: **Waiver of Exemption by Husband.** Where a husband absconded and abandoned his usual place of abode in the state, and an attachment was levied against his property, and his wife gave notice of her claim of exemption, under section 2185, Revised Statutes 1909, her right to such claim became so fixed that the subsequent return of the husband, for the express purpose of defeating her claim by appearing in the attachment proceeding and waiving exemption, did not deprive her of the right.

7. ———: ———: **Sale of Exempt Property: Liability of Constable.** Where a constable attached property, and the debtor's wife notified him that she claimed it as exempt, under section 2185, Revised Statutes 1909, her husband having absconded and absented himself from his usual place of abode in the state, and the constable subsequently made a new levy on the same property, under a general execution, and sold it thereunder, he did so at his peril.

8. **REPLEVIN: Right of Action: Possession of Defendant.** Under section 2637, Revised Statutes 1909, the evidence, in an action of replevin, must show that defendant had the possession of the property replevied when the action was begun.

9. ———: ———: ———: **Evidence.** In an action against a constable to recover goods levied on under an attachment, but claimed as exempt, the returns of defendant, as constable, are *held* to be conclusive evidence against him on the question as to whether he had possession of the goods when the action was begun.

Appeal from Audrain Circuit Court.—*Hon. James D. Barnett,* Judge.

REVERSED AND REMANDED (*with directions*).

*S. D. Stocks* and *F. R. Jesse* for appellant.

(1) A married woman may invoke all exemption and homestead laws now in force for the purpose of protection of personal and real property owned by the head of the family, except where the husband has claimed such exemption and homestead rights for the

protection of his own property. Sec. 4335, R. S. 1899; R. S. 1909, Sec. 8304; Bank of Liberal v. Redlinger, 95 Mo. App. 275; White v. Smith, 104 Mo. App. 199; Sharp v. Stewart, 185 Mo. 518. (2) The debtor's exemption right is a personal privilege, which he may or may not claim. Hambs v. Corbin, 20 Mo. App. 497. (3) The debtor can exercise the privilege only for his own and his family's benefit and not for the benefit of any other person. 18, Cyc. 1468, note 77; Gentley v. Stead, 77 Mo. App. 155; Garrett v. Wagner, 125 Mo. 450. (4) Exemption statutes, being intended more for a benevolent purpose and to provide for the protection of the family, are to be construed liberally to effect the purpose of their creation. State to use v. Dill, 60 Mo. 433; Boward v. Railroad, 83 Mo. App. 498; Batterton v. O'Dyer, 124 Mo. App. 306. (5) A waiver of right of exemptions by the husband only involves the notion of an intention not to insist on his right to claim exemptions. Fairbanks v. Baskett, 98 Mo. App. 53; 16 Cyc. 805, note 22.

*Robertson & Robertson* and *Fry & Rodgers* for respondent.

(1) The property belonged to J. B. Martin, and when it was seized he had the right to claim his exemptions or to waive them just as he saw fit; so long as he was present exercising the right to claim or waive exemptions in his own property his wife had nothing at all to do with it. The right to the exemption is a personal privilege belonging to the debtor, which he may or may not claim. The right to make the selection, the debtor may waive, just as he may waive his right to all exemptions. Homb v. Corbin, 20 Mo. App. 507; Osborne v. Schutt, 67 Mo. 714. (2) If Martin were a nonresident at the time his wife made the claim, she would not be entitled to the exemptions in his property for the reason he could not claim exemptions while a nonresident, and her rights

to claim exemptions in his property could not be superior to his. State ex rel. v. Chaney, 36 Mo. App. 516. (3) Section 2185, R. S. Mo. 1909, was passed in its present form in 1877. Section 8304 was passed in 1889, and refers and applies only to the property owned by his wife. Said section 8304 has no application to this case. (4) There is no evidence in the case showing that defendant was in possession of the property sued for at the time the suit was begun. Such evidence was necessary to a recovery. Rogers v. Davis, 21 Mo. App. 150; Davis v. Randolph, 3 Mo. App. 454.

REYNOLDS, P. J.—Plaintiff, on February 19, 1910, brought her action in the circuit court against defendant, constable of a township in Audrain county, in which she avers that on the 7th of February, 1910, in an action instituted in a court of a justice of the peace of that township, the action by attachment, wherein the Ferguson-McKinney Dry Goods Company was plaintiff and one J. B. Martin was defendant, a writ of attachment was issued and placed in the hands of defendant, as constable, who under the writ levied on certain goods and chattels, as of the property of J. B. Martin, the petition here describing them as all of the clothing, shoes, etc., kept and found in the store known as the "Martin Notion Store" in Mexico, Missouri. It is further averred that at that time plaintiff was the wife of J. B. Martin and that at the date of the attachment and seizure he had absconded and absented himself from his usual place of abode, and that thereby plaintiff became and was entitled to claim her exemptions as the wife of the absconding husband, out of the property and chattels so levied upon up to the value of three hundred dollars; that on the 9th of February, she notified defendant in writing of her claim and of her right to the exemptions and demanded that they be set off and

delivered to her and that defendant then refused and still refuses so to do. Plaintiff further avers that her husband then had nor has he now any other property out of which she could claim her exemptions, as provided by statute, and that she is the owner and entitled to the immediate possession of the goods and chattels before described, "being the same now in the possession of the defendant, and which he now holds and wrongfully detains from her;" that their value is three hundred dollars and that they have not been seized under any process, etc., against her property; that she will be in danger of losing the property described unless it is taken out of the possession of defendant. Judgment is demanded for the recovery of the possession of the goods and chattels or for the sum of three hundred dollars, the value thereof, together with one hundred dollars for damages, and for costs.

The answer is, first, a general denial; then it is pleaded that on the 7th of February, 1910, the suit referred to in the petition was instituted before the justice, in which suit the plaintiff therein, Ferguson-McKinney Dry Goods Company, sought to recover judgment against J. B. Martin in the sum of $242.54; that the justice had full jurisdiction of the case, both of the parties and subject-matter; that a writ of attachment issued therein directed to defendant, directing him to attach, seize and levy upon the goods, etc., of J. B. Martin, or sufficient thereof to satisfy the claim and costs; that defendant, under and by virtue of the writ, attached the goods and property of the defendant mentioned in plaintiff's petition and afterwards, by order of the court, caused the same to be sold; that before the institution of this plaintiff's present suit and before any notice was served upon defendant by the plaintiff, the defendant, J. B. Martin, in an action before the justice, entered his appearance in writing in the case, waived the issue of process or service there-

on, consented that the plaintiff there might have judgment against him for the full amount sued for and consented that the attachment might be sustained and that the property then in the hands of defendant, "which is the same property mentioned in plaintiff's petition," might.be sold to pay the debt sued for, and said J. B. Martin, in writing, waived all right to exemption under the law to or in the property attached. It is further averred in this answer that the defendant attached the goods, etc., mentioned in the petition and afterwards by virtue of the execution sold them, and that when attached and sold they were the property of J. B. Martin; that he had consented to their sale and that at the time they were sold, plaintiff here had no interest in them and could not maintain this suit.

The reply was a general denial.

The trial was before the court, a jury being waived.

Plaintiff testified that she was the wife of J. B. Martin; that they had their home and lived in the city of Mexico, this State; that all the property they had was in this store, which her husband owned; that she had no property of her own and is living with one of her sons-in-law, dependent on him. It appeared on her cross-examination that she had obtained a decree of divorce from her husband and that they had not lived together as man and wife from the time he had left their home in Mexico in January.

A witness on behalf of plaintiff, a son-in-law of plaintiff and her husband, testified that about the last part of January, 1910, J. B. Martin, in conversation with him, told him that he was going away and would not let anybody know where he was going or when he was coming back; that he packed his trunk and said he was going to leave and that nobody was going to know when he was going to move or when he was coming back. He left Mexico that evening, getting two negroes to carry his trunk to the depot. The next

Martin v. Barnett.

time the witness saw him in Mexico was ten or fifteen days afterwards, when he met him on the street, and Martin told witness that "some persons" not saying who, had told him to come back; that "If I hadn't come back the old lady would have got what I left, and now I come back and fixed it so she can't get a cent of it." It was in evidence from another witness, also a son-in-law of plaintiff and of J. B. Martin, that he had been working in Martin's store at Mexico, he and Martin running the store together. About the last of January, 1910, he saw Martin packing some goods in his trunk and on the evening of January 31, 1910, while he and Martin were together in the store about eight o'clock in the evening, Martin gave him the key of the store, said he was going away and would never return to Mexico nor to the state; that he (witness) could run the store and use the proceeds to pay his creditors; that he was going away and out of the state and would never return nor would any person ever know where he was. This witness ran the store a few days, then closed it up; did not see Martin after the evening of this 31st of January until about the 16th of February, when he casually met him in Mexico. Martin had not been seen by him nor been at the store in the intervening time, nor was he at home until that time. Witness did not know where he had been in the interval, except from what Martin had told him.

The files of the case of Ferguson-McKinney Dry Goods Company v. J. B. Martin were introduced and read in evidence. The affidavit for attachment, after averring the indebtedness, stated, as grounds for the attachment, "that the defendant has absconded and absented himself from his usual place of abode in this state, so that the ordinary process of law cannot be served upon him," and that affiant has cause to believe and does believe that defendant is not a resident of this state. This was sworn to by an agent of plaintiff in that case and filed with the justice on the

7th of February, 1910, on which date the writ of attachment and summons were issued and placed in the hands of the constable, defendant here. The constable, defendant here, made return on this, that on February 7, 1910, he had executed it by seizing and levying upon and taking into his custody and possession goods and chattels of the defendant described in an inventory attached to the writ, and that he had "further executed this writ on the 17th day of February, 1910,. by not finding the defendant J. B Martin in my said county."

As· appears by the docket entries of the justice, on the 16th of February, 1910, the defendant J. B. Martin appeared before the justice and entered his appearance "and consents that the attachment be sustained and that judgment be entered in favor of plaintiff for the sum of $245.30, and waives all exemption right and consents that the property now in the hands of the constable be sold to satisfy said judgment and costs." Whereupon judgment followed that plaintiff, the Ferguson-McKinney Dry Goods Company, recover of defendant, J. B. Martin, the debt and the costs and that execution issue therefor. General execution issued on this judgment on the 18th of February for the amount of the debt, $245.30, and costs, to be levied of the goods, chattels, etc., of the defendant, J. B. Martin. The constable; defendant here, made return on this execution that he had, on the 18th of February, executed it by levying upon and seizing as the goods and chattels of J. B. Martin, all his stock of dry goods and notions in the store in Mexico, describing the location of the store and describing the goods levied upon. To this return and on this same execution the constable, defendant here, added that he had further executed the writ on the 3d of March, 1910, by exposing the goods levied on for sale at public vendue for cash and one Trimel, being the highest bidder, had bought all the stock for $255; that he, the constable, had applied $57.55 to the costs and expenses of the

sale and care of the property, leaving in his hands $197.45, "which I hold pending the action of the circuit court."

The written entry of the appearance of J. B. Martin in the cause of Ferguson-McKinney Dry Goods Company v. J. B. Martin, was introduced in evidence and is marked by the justice as having been filed February 16, 1910. By it Martin enters his appearance in that cause then pending against him before the justice, consents that plaintiff may take judgment against him "this day" for the full amount sued on in the cause and waives service of process, the paper continuing: "And I hereby confess the grounds of attachment in this cause alleged by plaintiff and consent that the attachment may be sustained by the justice in this cause, and that the property attached and now in the hands of the constable and sheriff in this cause, may be sold to pay the judgment which is rendered against me and all costs of suit, and I hereby waive all exemptions and exemption rights, which I have or may have in the property attached."

Defendant was called and examined as a witness by plaintiff and testified he was the constable who had made the levy. He testified that the property levied on was that set out in the inventory and was the same property described in the writ of attachment and that it was the same property he had sold under the execution; that the value of the property at the time he sold it was $255; that the written notice of claim of exemption by Mrs. Martin, the plaintiff here, was served on him February 9, 1910, and he identified the notice; that he had sold all the property he had levied upon under the writ of attachment. This notice was introduced in evidence. It is addressed to the constable, defendant here, and notifies him that plaintiff, wife of J. B. Martin, defendant in the case then pending before the justice, claims and asserts her right of exemption out of the property levied on by the con-

stable in that cause as the property of defendant, J. B. Martin, under and by virtue of the statutes of this state in such case made and provided; that J. B. Martin had absconded and absented himself from his usual place of abode and has no other property out of which such exemptions can be claimed as provided by statute; wherefore she claims such exemptions as the wife of J. B. Martin under and by virtue of the provisions of the statutes of this state.

This is all the testimony in the case. At its close defendant interposed a demurrer to the evidence which the court gave. Plaintiff took a nonsuit with leave to move to set it aside, and filing that motion in due time, on its being overruled perfected her appeal to this court.

While the rights of the wife under what are now sections 2185 and 8304, Revised Statutes 1909, have, in a number of cases, been before the appellate courts of this state for construction and application, we have found no case in which facts analogous to those here in evidence and the precise question here presented have arisen and been determined. We can only determine it here, therefore, by examination of the cases in which these sections of the statutes have been before our courts and, guided by the spirit of the statute, and the underlying reasons for the decisions, endeavor to reach a right conclusion in this case and determine it on accepted principles.

There is no contention or pretense of evidence against the fact that at the time when the action of the Ferguson-McKinney Dry Goods Company was commenced against J. B. Martin, and when the attachment issued and the attached property was seized, that J. B. Martin had "absconded and absented himself from his place of abode." The grounds upon which the attachment was sued out in this case are that the plaintiff "has good reason to believe and does believe that the defendant is not a resident of this state. That

the defendant has absconded and absented himself from his usual place of abode in this state, so that the ordinary process of law cannot be served upon him.'' There was no evidence in this case even tending to show that the defendant Martin had left this state or that he was not a resident of this state at the time when the action was commenced. The presence in the affidavit for the attachment of the averment that the plaintiff has good reason to believe and does believe that Martin was not a resident of this state at the time, was not proof of that, even if proof of it would have defeated the claim of plaintiff here to the benefit of the exemption. Her claim rests on proof of the fact that her husband had then absconded and absented himself from his usual place of abode.

In Griffith v. Bailey, 79 Mo. 472, it is held that where the evidence shows that as a matter of fact the husband has absconded or absented himself from his place of abode, it does not affect the right of the wife to claim the benefit of the exemption that it was alleged in the affidavit for the attachment that he was about to leave the state with the intent to change his domicile. Lindsey v. Dixon, 52 Mo. App. 291, is to the same effect. So that we need not consider that part of the affidavit for the attachment.

The fact that Martin had absconded and was absent from his usual place of abode is further in evidence by the returns which the defendant himself, as constable, made and which are in evidence in this case. In his return to the writ of attachment, after reciting that he had executed that on the 7th day of February, 1910, the constable recites that on the 17th day of February, 1910, he returned the writ of summons ''not found'' as to the defendant J. B. Martin. He never was ''found'' for service.

According to the testimony, after the disappearance of Martin about the 31st of January, 1910, he ap-

peared in Mexico on the 16th day of February of that year, was seen by his two sons-in-law on the streets of Mexico and on that day, the 16th of February, the day before the return day of the writ of summons, Martin appeared in person before the justice of the peace, voluntarily entered his appearance in the case and confessed to the grounds set out in the attachment. One of these grounds was, as has been noted, that he had absconded and absented himself from his usual place of abode in this state. There is some evidence in the case, drawn from the plaintiff on cross-examination, that at some time not named and about the time when it is said that she had obtained a divorce from him, Martin had been staying at the house of one of his sons-in-law. When that was, however, what time that was, is not fixed by any testimony in the case. It is a significant fact, however, that when this case was tried, which was on the 7th day of July, 1910, J. B. Martin does not appear to have been present; at all events he was not called as a witness by either party, and all trace of him is lost after February 16th, save the very incidental reference to the fact that at some time, date not given, he and his wife were staying with a married daughter, but not living together. We are therefore warranted in holding that under the evidence it was manifest that he had absconded and absented himself from his usual place of abode in the latter part of January, 1910, and that so far as any evidence in the case is concerned, save his casual appearance in Mexico on the 16th day of February following, within the eye of the law, he had absconded from and abandoned his usual place of abode in this state down to the time of the trial of this case. It is also in evidence in this case that when this J. B. Martin made his appearance before the justice and was in the city of Mexico on that 16th day of February, that he stated that he had returned because parties undisclosed had asked him to do so. That his purpose in returning and entering his

waiver and appearance and confession to the grounds of attachment before the justice was for the mere purpose, as he stated, to his son-in-law, in the conversation he had with him about the 15th of February, to defeat this plaintiff, his abandoned wife, of her claim, and neither a return, nor a claim in good faith, is clear. He then said: "If I hadn't come back the old lady would have got what I left, and now I come back and fixed it so she can't get a cent of it." "The fixing" he boasted of undoubtedly referred to his act in confessing judgment and waiving his exemption. He undoubtedly thought that by this he had "fixed" it so that his wife could not get a cent of the pittance which was remaining of the stock of goods in the store.

The evidence shows that beyond bed and bedding and a few trifling articles, the property seized was all the property he had. The defendant himself testifies that the value of that property was $255 on March 3, 1910, the day upon which it was sold. Giving the defendant the benefit of the value as at the day of the sale, instead of the day of demand and refusal, the evidence shows that the value of the property claimed by this plaintiff was within the statutory exemption of three hundred dollars.

Although in the answer in this case defendant sets up that before the institution of this suit and before any notice had been served upon him by this plaintiff, J. B. Martin, the defendant in the attachment had, in writing, entered his appearance in the cause, waived the issuance of process and service thereof and consented that the plaintiff in the cause might have judgment against him for the full amount sued for and consented that the attachment might be sustained and that the property therein in the hands of defendant, "which is the same property mentioned in plaintiff's petition," might be sold to pay said debt and in writing waived all right to exemptions under the law to or in said property attached, the evidence shows beyond

any question that the notice of the plaintiff of her claim to the exempted property as the wife, abandoned by her husband, had been served on this defendant on the 9th day of February, 1910, seven days before J. B. Martin entered upon the scene and attempted to do these matters of waiver, etc. The fact of the time of the service of this notice upon defendant, is evidenced by his own written acceptance of the notice as of date the 9th day of February, 1910.

It is true that defendant in his return to the general execution, sets up that he executed that on February 18th, by levying upon and seizing the goods, etc. The facts in evidence show beyond question that there was no second taking or seizure; that was done in fact under the writ of attachment on February 7th. The indorsements on the general execution in evidence tend to show that the justice taxes seventy-five cents for issuing attachment, the constable taxes one dollar for serving attachment, twenty-five dollars for "taking and keeping property," twenty dollars for "taking and keeping property under ex." No dates are given for these. When it is remembered that he seized the property on February 7th and sold it on March 3d, it is evident that the whole thing was one and the same transaction, and the alleged seizure under the execution was a mere pretense. If that seizure was the one under which the property was in fact held, neither constable nor justice had any right in law to tack on to it the costs accrued under the former seizure or attachment. These are the facts in this case as shown by practically uncontradicted evidence.

Our courts have held that what are now sections 2185 and 8304 of our statute, the sections relating to exemption of property from levy and sale under execution or attachment, are always to be given a liberal interpretation; they are to be construed liberally in the interest and for the benefit of those within their protection. [See State to use Houseworth v. Dill et al.,

60 Mo. 433, l. c. 435; Bovard v. K. C., Ft. S. & M. Ry. Co., 83 Mo. App. 498, l. c. 501, and cases cited; Betterton v. O'Dwyer, 124 Mo. App. 306, l. c. 316, 101 S. W. 628.]

In Osborne v. Schutt, 67 Mo. 712, and Hombs v. Corbin, 20 Mo. App. 497, it is held that the debtor's right to exemption is a personal privilege belonging to the debtor which he may or may not claim; it is a personal privilege to be exercised when the officer calls with the writ or makes a levy, and then only for the benefit of the claimant and not for the benefit of another. [Garrett v. Wagner, 125 Mo. 450, l. c. 462, 28 S. W. 762.] In the case of Hombs v. Corbin, supra, citing Freeman on Executions, section 218, it is said (l. c. 507) that the debtor may sell his exempt property notwithstanding judgment or execution liens, and that in case of a sale of exempt property, the purchaser would stand in the place of the debtor and could assert the right of the latter to the exemption. This latter statement, however, does not seem to harmonize with what we understand our Supreme Court to hold in Osborne v. Schutt, supra, at page 714.

In Griffith v. Bailey, supra, it is said (l. c. 476), construing what is now substantially section 2185, as that section is to be applied in case the husband has absconded, "The husband here absented himself from his home, leaving his wife behind with no instructions or purpose so far as the record discloses, to abandon that home or follow him. The moment he so left her, her right under the statute attached. It then became vested or demandable in 'her name' and was 'exempt from execution or attachment' against the husband." In this case of Griffith v. Bailey, it is held that when the husband has absconded or absented himself from his place of abode, his wife, under section 2185, may select and hold exempt from execution or attachment, property to the value of not exceeding three hundred dollars, the husband "being so absent

from his place of abode as to authorize the wife to lay claim to the property of the husband." It is further-there said that "if the defendant would invoke some exceptional provision of an antecedent statute, *pari materia,* it clearly devolved on him, by appropriate evidence, to bring himself within its operative words." The anterior statute referred to above is what is now section 2312, Revised Statutes 1909, and the clause referred to is that which denies the benefit of the exemptions to nonresidents of this state.

In State ex rel. Fowler v. Chaney, 36 Mo. App. 513, the defendant constable was sued on his bond for improperly and unlawfully releasing to the wife of the defendant in an attachment, property claimed by her as exempt. The ground of the attachment was that the defendant therein was a nonresident of this state, and the attachment was sustained. It was there held that under such allegation, the defendant husband could not, under section 2312, Revised Statutes 1909, claim exemption, he being a nonresident, and that as the husband was not entitled to the protection of our exemption laws, neither was his wife.

Lindsey v. Dixon, supra, was an action by attachment before a justice of the peace—goods of husband seized under the writ—grounds of attachment, that defendant had absconded, etc., was about to remove his property, etc., with intent to defraud, etc., his creditors, and that he has fraudulently conveyed, etc. [Subdivisions 4, 5, and 8, sec. 2294, R. S. 1909.] The wife interpleaded, claiming the benefit of exemption on the ground that her husband had absconded and absented himself from his usual place of abode in the county. The plaintiff amended his affidavit and added as a cause for attachment "that the defendant is a nonresident of the state." [Subdivision 1, section 2294.] The court held that while the husband is a nonresident or is about to remove out of the state, neither he nor his wife can have the benefit of the

exemption.  But the court there further held that al-
though these are the grounds alleged as the basis for
the attachment, the wife is not necessarily barred of
her claim, if the husband has in fact absconded.  It
is further there held that one could abscond or absent
himself from his place of abode without becoming a
nonresident of the state; the former is not necessa-
rily a resulting consequence of the latter.

In Guntley v. Staed, 77 Mo. App. 155, it is said
by this court (l. c. 164) that ''exemption of property
from execution is a personal privilege and can only
be exercised by the debtor and only for his personal
benefit—not for the benefit of another.''  But no ques-
tion of the right of the wife under section 2185 was
there involved.  Garrett v. Wagner, supra, is referred
to as authority for this.  As will be noticed by refer-
ence to the facts in that case and to its decision, the
particular point involved before us—the right of the
wife of an absconding husband to claim this exemp-
tion—was not involved.

State ex rel. v. Wolf, 81 Mo. App. 586, was an
action on a constable's bond, the breach assigned being
that the constable had wrongfully deprived the re-
lator of her exemption rights.  After the constable had
made the levy and seized the property under the writ
of attachment as that of the defendant husband, the
wife claimed it as exempt, the property consisting of
groceries, store fixtures, a horse and delivery wagon,
on the ground that the husband had absented himself
from his usual place of abode and she did not know his
present whereabouts.  On trial the wife proved that
at the time she had made her claim of exemption, her
husband had absconded; that when she made her claim
to the constable he declined to recognize it.  The wife
recovered judgment against the constable on his bond.
On appeal of the constable, this court held, in answer
to the contention that the wife had not made her elec-
tion under the statute or made selection of specific

goods, that the contention could not be sustained; that the written notice was a sufficient election under what are now sections 2180 and 2183; that she could have claimed the horse under section 2180 and other property up to three hundred dollars under section 2183, referring to Mahan v. Scruggs, 29 Mo. 282.

In First National Bank of Monett v. Morkamp, 130 Mo. App. 118, 108 S. W. 1085, there was a levy under a writ of attachment on certain property. The defendant, when notified by the officer of his right to claim exemption as head of a family, replied that he had sold everything he had and had nothing upon which to make the claim. This was asserted to be a waiver by the husband of his right to claim any of the property as exempt. All his property was levied upon and seized. The husband, defendant in the attachment, was arrested, tried, convicted and sentenced to the penitentiary, where he was confined at the time of the trial. After the seizure of the property and after the arrest and while the husband was confined to jail, where he had been kept prior to trial and commitment to the penitentiary, his wife claimed the attached property. In passing on the case this court held that the issue of the defendant having waived his right to statutory exemptions being one of fact and having been passed on by the jury in favor of the wife, was concluded here. On the question of the right of the wife under the facts, this court held that the absence of defendant from his home was involuntary, he being confined to jail, and while he could have made the claim while in jail, in the spirit of the law he was then "absent from his place of abode" and the wife was in position and had the right to make the claim to the property as exempt. In the case at bar, we do not need to consider as a fact for determination, the attempted waiver of this husband; as will presently appear, we hold that his attempted waiver was a nullity.

In Elliott v. Washington, 137 Mo. App. 526; 119 S. W. 42, it is held that when the property has been mortgaged and is claimed by the mortgagee under the mortgage, the right of exemption does not extend to the mortgaged property. That is, all the interests of husband and wife are subject to the right of the mortgage.

It is clear from a consideration of our statutes relating to the claim of exemption, that either the husband or the wife can claim exemption; the wife, under section 2185, Revised Statutes 1909, only when the husband has absconded or absented himself from his usual place of abode in this state; under section 8304 only when the husband has failed to make his claim. The husband and wife cannot at once and separately make the claim on different or on the same property. There is only one exemption. Either can, the statutory facts being present, claim the exemption; both cannot. [White v. Smith, 104 Mo. App. 199, 78 S. W. 51; Sharp v. Stewart, 185 Mo. 518, l. c. 528, 84 S. W. 963.]

These are the decisions to which we have been referred or which we have ourselves found in the course of our examination of this case. The rule which we think is to be deducted from a consideration of them and of the statute is that, adhering to that other rule of a liberal construction of these statutes in favor of the head of a family or of the wife, in the case of an absconding or absent husband, that when this husband confessedly absconded and deserted his wife and abandoned his usual place of abode, and that was the situation at the time when the levy was made, that the wife then became vested with a right to claim her exemption by virtue of the abandonment, that she then made her claim and that that right then became so fixed in her that the subsequent incidental and, what the evidence in this case warrants us to say, pretended return of the husband, for the express purpose of de-

feating his wife of her claim, did not divest her of the right to this exemption.

The goods which had been levied upon, seized and attached under the writ of attachment issued on the 7th day of February, 1910, were sold on the 31st of March, 1910, ostensibly under the execution which had been issued on the 18th day of February, 1910. But it is clear that long before this sale took place and while the goods were in the possession of this defendant, the plaintiff here had notified him in writing of the existence of her claim, of the facts upon which it was founded, of the goods the claim was to operate upon, and of her assertion of her right under the statute. He saw fit to deny the claim. Granting that he made a new levy under the general execution, he levied on goods that he then knew were claimed as exempt by this plaintiff; when he denied the claim and afterwards went on with the sale, he did so at his peril.

In Fairbanks, Morse & Co. v. Baskett, 98 Mo. App. 53, 71 S. W. 1113, Judge GOODE, in discussing the law of waiver as related to estoppel, demonstrates that a waiver is only of force as against the party making it, and only as to him, if the rights of others, or substantial rights of his own are involved; if this occurs the waiver must be supported by a consideration. When the husband here attempted to waive his right to exemptions, the right to claim them had, by his act of absconding and absenting himself, passed to his wife; he had nothing to waive; that he had returned after having absconded, did not reinvest him with any right which the wife had fallen into by his act of absconding and absenting himself.

There is no question as to the value of the goods seized and sold. That they were in the possession of this defendant at the time that this suit was institu--ted, is admitted and clearly established by the evidence in the case. The action of the circuit court, placing

that action on the ground that the wife was cut out of her claim to exemption by the act of her husband, cannot be sustained under the law and under the facts in the case.

It is urged, however, by the learned counsel for respondent, that there is no evidence in this case showing that the defendant was in possession of the property sued for at the time the suit was begun. Hence it is claimed that as evidence of possession was necessary to a recovery, the demurrer was properly sustained on that ground. There can be no dispute of the proposition that possession by defendant of the property replevied when the action is begun must appear. [Section 2637, R. S. 1909.] We are unable to understand on what evidence or lack of evidence counsel make this contention. The returns of defendant, as constable, and which are here in evidence are against him—conclusively so. He is shown to have been in possession of the property involved from February 7th, when he seized it, until March 3d. This action was begun February 19, 1910. So that on this ground the action of the learned trial judge cannot be sustained.

Our conclusion is that the judgment of the circuit court of Audrain county in this case should be reversed, and the cause remanded for further proceedings in accordance with this opinion. *Nortoni* and *Caulfield, JJ.,* concur.