43 N.J. Super. 473 (1957)
129 A.2d 56
LOUISE WILLIAMS, PETITIONER-RESPONDENT,
v.
DEPARTMENT OF PUBLIC WELFARE, CITY OF NEWARK, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Essex County Court, Law Division.
Decided February 1, 1957.
*474 Messrs. Braff, Litvak & Ertag, attorneys for petitioner-respondent (Mr. Leo Ertag, of counsel).
Mr. Vincent P. Torppey, attorney for respondent-appellant (Mr. Jacob M. Goldberg, of counsel).
GAULKIN, J.C.C.
On February 16, 1954 Louise Williams was awarded $4,125 by the Division of Workmen's Compensation against her employer, the City of Newark, for injuries sustained in an accident which occurred in the course of her employment. Periodic payments were made to her by the city upon this award until all but $545 had been paid, when *475 the city discovered that she had embezzled from it a large sum, stipulated to be "far in excess of $4,125.00." The city thereupon made application to the Division of Workmen's Compensation for an order adjudging the then unpaid balance of $545 to be "fully paid and satisfied." The Division denied the application on the ground that a workmen's compensation award is "exempt from all claims of creditors" and from "levy, execution or attachment" by virtue of R.S. 34:15-29. The city appeals.
The argument of the city is that (1) it is not a "creditor" nor is it making a "levy, execution or attachment" within the meaning of the statute; (2) even if it is, Mrs. Williams should be denied the balance "on the theory of equitable estoppel" or because it would be immoral, unjust, and therefore against public policy to permit her to collect that balance after having stolen so much more from her employer.
The Division has no jurisdiction to declare an award "paid" because the employee owes the employer a sum, liquidated or unliquidated, upon an independent claim. The Division has only the jurisdiction given it by the Workmen's Compensation Act, Goldmann v. Johanna Farms, Inc., 26 N.J. Super. 550 (Cty. Ct. 1953); Phillips v. Allbright, 126 N.J.L. 14, 15 (Sup. Ct. 1940); Tortoriello v. Toohey, 121 N.J.L. 604 (Sup. Ct. 1939), affirmed 123 N.J.L. 202 (E. & A. 1939), and that act contains no provision for counterclaim, recoupment or set off. Dikovich v. American Steel & Wire Co., 36 N.J.L.J. 304 (Com. Pl. 1913); Newark Paving Co. v. Klotz, 85 N.J.L. 432 (Sup. Ct. 1914), affirmed 86 N.J.L. 690 (E. & A. 1914); Rumbolo v. Erb, 19 N.J. Misc. 311 (Com. Pl. 1941); R.S. 34:15-25. The decision of the Division can be affirmed on the ground it had no jurisdiction to do what the city asked, but since the matter was presented below and here on the merits without objection to the jurisdiction, it will be so decided.
The city concedes that no sum due from the employee to the employer arising out of tort or contract may be set off or counterclaimed against an award. This is so even when the result may be to compensate the employee doubly *476 for his injury. Dikovich v. American Steel & Wire Co., supra; Newark Paving Co. v. Klotz, supra. See also Beattyville Co. v. Sizemore, 203 Ky. 7, 261 S.W. 620 (Ky. Ct. App. 1924).
In the Dikovich case the employee sustained an eye injury. Without waiting for the employee to institute any proceedings, the employer immediately expended certain sums for a specialist, a private room and a private nurse, and for other medical treatment and services. A portion of this was admittedly essential, the remainder desirable. The employer asked that these disbursements be deducted from the amount of the employee's award. The employee objected, insisting among other things "that the expenditure * * * cannot be * * * allowed as a set off in this proceeding." The court agreed, saying:
"The respondent contends that the amount was expended for the petitioner's medical needs; that for want of treatment the petitioner was in danger of losing the sight of both eyes, and possibly, of losing his life. Instead of standing on its legal rights, and refusing to supply medical treatment beyond the $50 provided for by the statute, the respondent generously furnished medical assistance far beyond that amount. By doing so the petitioner was undoubtedly benefited, and the respondent avoided a possible claim for increased damages. The contention is, therefore * * * that the petitioner, having accepted the benefits, is liable for repayment.
If these expenditures were made at the request or with the consent, express or implied, of the petitioner, the respondent may possibly have a remedy in a suit at law. In my opinion, however * * * the amount cannot be deducted from the weekly compensation payments provided for by this Act.
By the statute, the petitioner, if entitled to anything, is entitled to a specific amount. No setoff or deduction is provided for by the Act, and to permit an employer to expend the whole or a considerable portion of the compensation for medical attendance, or for any other purpose, would seriously interfere with the legislative intent, and would practically amount to a commutation of the payments for a purpose which is specifically prohibited by the Act.
In addition to the well-established policy of the law of this state protecting the wages of an employe, this act especially provides that commutation shall not be allowed for the purpose of enabling the injured employe, or the dependents of a deceased employe, to satisfy a debt, or to make payment to physicians, lawyers, or any other persons. The weekly payments under this Act are in lieu of wages, *477 and are to be so received, and no deduction can be allowed in this proceeding as a setoff against the weekly payments under the Workmen's Compensation Act."
See also Vrablick v. Radtke, 38 N.J.L.J. 267, 269 (Com. Pl. 1915).
In the Klotz case, while Klotz was working for his employer, he was killed by a Public Service Corporation trolley. Prior to the hearing of the workmen's compensation petition, Public Service paid $800 for a release of its liability. The employer contended that the payment by Public Service discharged it altogether from any obligation to pay compensation, or at least that it was entitled to the benefit of the $800 payment. (This was prior to the adoption of L. 1913, page 302, relating to third-party actions and to the employer's rights in such circumstances.) The court held that under the act as it then stood "the release * * * of the claim against the street railway could not be the bar to the right to compensation under the statute. It is true this conclusion makes it possible for the employe to secure * * * double compensation. This was probably not the intent of the Legislature, though, as we think, the result of the language of the statute."
In the Beattyville case, supra, the employee sued the employer at law, but his action was dismissed with costs because his remedy was held to be solely under the Workmen's Compensation Act. In a subsequent proceeding by the employee for workmen's compensation, the employer sought to set off the judgment for costs, but the Court of Appeals of Kentucky held that their statute, similar to ours, permitted no set off. See also Gregg v. New Careyville Coal Co., 161 Tenn. 350, 31 S.W.2d 693 (Tenn. Sup. Ct. 1930); Prime v. Dunaway, 164 Tenn. 396, 50 S.W.2d 223 (Tenn. Sup. Ct. 1932).
It is well settled that the award is "`in lieu of wages.'" Kozielec v. Mack Mfg. Corp., 29 N.J. Super. 272 (Cty. Ct. 1953); King v. Western Electric Co., 122 N.J.L. 442, 448 (Sup. Ct. 1939). Furthermore, the statute expressly forbids the commutation of the awarded weekly payments, except under the circumstances set forth in R.S. 34:15-25. *478 Were set off permitted of ordinary contract or tort claims, it would violate the purpose as well as the letter of the statute. Newark Paving Co. v. Klotz, supra; Dikovich v. American Steel & Wire Co., supra.
The city concedes that this is true as to all claims arising out of "ordinary" contracts and "ordinary" torts. What the city contends is, to quote from its brief, "that no exemption should be allowed against any claim for the recovery of money misappropriated by a public employee, since such act constitutes both a tort and a crime."
Is that a valid distinction? Many torts are also crimes. Within constitutional limits, anything may be made a crime by the Legislature. Suppose the "tort and crime" is cashing a bad check with the employer, or assault and battery upon him, or causing the employer's death by driving with criminal carelessness? Suppose the "tort and crime" is criminal libel or malicious mischief? And when does a tort become a "tort and crime? Is it when the employee has been convicted of the crime? What about employees who have been acquitted? And those who have never even been arrested, or charged with the crime? I confess I can find no basis upon which to accept the thesis that there may be a set off for all acts which happen to be crimes.
The city admits its status as a city gives it no greater right than a private employer to set off or counterclaim "ordinary" claims in tort or contract. What the city urges is that the fact that this is an extraordinary claim  the crime of embezzlement by a public employee from a governmental agency. The city argues that that makes a difference, on the ground of "public policy." In the case at bar, the city happens to be a self-insurer. Should a set off be permitted to a self-insured city, and not when the insurance is provided by an insurance company?
The city points out that in Fischer v. Fischer, 13 N.J. 162 (1953), the Supreme Court read an exception into R.S. 43:16-7 on grounds of "public policy," in spite of the fact that R.S. 43:16-7 exempts police and fire pensions in language as strong as R.S. 34:15-29. In that case the *479 Supreme Court held that a pension can be reached to pay for the support of the pensioner's wife and his children, and the city argues that if the court could do that in the Fischer case for the wife and children, it can do so in this case for the defrauded municipality.
However, the considerations which influence courts to reach pensions and even workmen's compensation awards (Commons v. Bragg, 183 Okl. 122, 80 P.2d 287 (Sup. Ct. 1938); cf. Larson, Workmen's Compensation (1952), sec. 2.60 and sec. 58.40; Newell v. Sunshine Mining Co., 70 Idaho 429, 220 P.2d 685 (Sup. Ct. 1950); Mabry v. Aetna Casualty & Surety Co., 230 S.W.2d 572 (Tex. Civ. App. 1950)), to provide support for a wife or children do not apply here. Those cases proceed, as did the Fischer case, on the theory that the very purpose of pensions and compensation awards is to keep the recipient and his family from want. The courts therefore reach those funds for the benefit of the intended beneficiaries without too much violence to accepted legal doctrines. (Note, however, the strong dissent in the Fischer case, and cf. Hoffman v. Hoffman, 8 N.J. 157 (1951). See also the notes in 11 A.L.R. 123, 106 A.L.R. 669, and 130 A.L.R. 1028). I am not aware of any such considerations, or any theory, upon which I can do for the defrauded city what the courts have done for wives and children. I would like to, but a judge's visceral reaction is not a reliable guide to "public policy." "Public policy" is not "a brooding omnipresence in the sky" resting there to enable a trial judge to do what he considers equity in every exceptional case in which the rule of law "by reason of its universality" leads to what seems to him to be an awkward conclusion. Unless the path of public policy is plain "it seems judicious to leave any further pronouncement to the Legislature." Hoffman v. Hoffman, supra.
The city cites no case which recognizes the public policy for which it contends. The city does cite Vincent v. State, 74 Ala. 274 (Sup. Ct. 1883), but that case merely followed Meredith v. Holmes, 68 Ala. 190 (Sup. Ct. 1880) and Williams v. Bowden, 69 Ala. 433 (Sup. Ct. 1881), in which it was *480 established that the exemption in Alabama is only against a "debt" and "does not protect against recoveries for torts." The city also cites Enderman v. Alexander, 68 Colo. 110, 187 P. 729, 10 A.L.R. 767 (Sup. Ct. 1920), but that case merely held that a Colorado statute which exempted working animals and tools from execution upon "any judgment" did not bar the collection out of such property of fines imposed in a criminal proceeding. But cf. 35 C.J.S., Exemptions, § 79, p. 114; Commonwealth v. Cassady, 159 Ky. 776, 169 S.W. 497, L.R.A. 1915A, 1214 (Ky. Ct. App. 1914); Betterton v. O'Dwyer, 124 Mo. App. 306, 101 S.W. 628 (Mo. App. 1907). The remaining cases cited by the city are all cases in which exempt funds were reached for the support of the wife or children. For the very reason that the court deemed wages to be for the benefit not only of the wage-earner but for his wife and children, in Ohio Casualty Ins. Co. v. Galvin, 222 Iowa 670, 269 N.W. 254, 108 A.L.R. 1036 (Sup. Ct. 1936), the court refused to reach the salary of a public official who had defaulted, for the benefit of the surety on his bond.
In spite of the able argument of the city, based on definitions of "creditor," that the language of R.S. 34:15-29 is not broad enough to bar what the city seeks, my conclusion is to the contrary.
For the foregoing reasons the decision of the Division is affirmed.